# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

**RYAN NOAH SHAPIRO**,

Plaintiff,

v.

**U.S. DEPARTMENT OF JUSTICE**,

Defendant.

Case No. 1:16-cv-01399 (TNM)

---

## MEMORANDUM OPINION

Plaintiff Ryan Noah Shapiro seeks a judgment from this Court that the U.S. Department of Justice ("DOJ"), by and through its components the Federal Bureau of Investigation ("FBI") and the Office of Information Policy ("OIP") (collectively, the "Defendant"), violated its obligations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., in responding to seven requests submitted by Mr. Shapiro. Compl. 9. In particular, Mr. Shapiro challenges the FBI's search for responsive records as inadequate, disputes the FBI's refusal to process one request, and argues that the FBI and OIP improperly redacted non-exempt information from the responsive documents disclosed to Mr. Shapiro. *See id.*[1]

Pending before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. As jurisdiction and venue is proper in this Court,[2] and upon consideration of the pleadings, relevant law, related legal memoranda in opposition and in

---

[1] Mr. Shapiro initially further sought a declaration that he is entitled to a waiver of fees paid in relation to one of his requests. *Id.* However, this issue is moot as the FBI has since refunded the fees paid by Mr. Shapiro. Mem. of P. & A. in Supp. of Def.'s Mot. for Summary J. ("Def.'s Mot. for Summary J.") 4 n.1, ECF No. 13-3.

[2] *See* 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. §§ 1331, 1391.

support, the parties' representations at oral argument, and the entire record therein, I find that no genuine issue of material fact exists and that the Defendant has met its obligations under FOIA. Accordingly, the Defendant's motion for summary judgment will be granted and the Mr. Shapiro's motion for summary judgment will be denied.

## I. BACKGROUND

Plaintiff Ryan Noah Shapiro is a "historian of national security, the policing of dissent, and governmental transparency." Compl. ¶ 1. Between June 5, 2014 and May 11, 2016, Mr. Shapiro submitted seven FOIA requests to the FBI and OIP seeking information regarding a research and public relations effort conducted by the FBI in the mid-to-late 1970s called "Operation Mosaic." *Id.* at ¶¶ 13-15, 21-66. According to Mr. Shapiro, Operation Mosaic was conducted to "publicly highlight perceived difficulties for the FBI caused by the 1974 amendments to [FOIA]," and to "secur[e] legislation to limit the applicability of the newly amended FOIA to the FBI, as well as to justify unilateral FBI measures to limit Bureau disclosures under FOIA." *Id.* at ¶ 13. In support of his interest in the matter, Mr. Shapiro quotes an article written in 1982 by then-FBI Director William Webster ("Webster article"), who explained that the FBI "reviewed FOIA materials that already had been released. . . . [and] discovered that seemingly innocuous information can be combined with records released at a different time . . . [that] could reveal clues as to the identity of FBI sources or the extent of an FBI investigation." *Id.* at ¶ 15. The existence and contents of the article are not contested by the FBI. *See* Def.'s Response to Pl.'s Statement of Material Facts ("Def.'s Response to Pl.'s SOMF") ¶ 2, ECF No. 17-2. "Operation Mosaic" and mosaic-related terms underlie all of Mr. Shapiro's requests to the Defendant.

## A.  Mr. Shapiro's FOIA Requests

Mr. Shapiro's seven FOIA requests are as follows.  First, on June 5, 2014, Mr. Shapiro submitted a request to the FBI seeking records "relating or referring to FBI file 94-69979." Def.'s Statement of Material Facts As to Which There Is No Genuine Issue ("Def.'s SOMF") ¶ 1, ECF No. 13-1.[3]  This file contained the Webster article that referred to Operation Mosaic. Pl.'s Statement of Material Facts As To Which There Is No Genuine Dispute ("Pl.'s SOMF") Ex. 16, ECF No. 16-4.  The FBI assigned tracking number 1272678-000 to the request, and on July 24, 2014, after processing the request, the FBI released 49 pages of previously processed documents deemed responsive to the request to Mr. Shapiro.  Def.'s SOMF ¶¶ 2-3.  The FBI's response was affirmed on internal administrative appeal.  *Id.* at ¶¶ 3-4.  Subsequent to the appeal, the FBI provided Mr. Shapiro with a coded and Bates stamped version of material previously released to him on July 24, 2014.  *Id.* at ¶ 5.

Second, on June 5, 2014, Mr. Shapiro requested from the FBI all records "relating or referring to Operation Mosaic."  *Id.* at ¶ 6.  The FBI assigned tracking number 1272573-000 to the request and, after its search, informed Mr. Shapiro that no records were identified as responsive to the request.  *Id.* at ¶ 7-8.  The FBI's determination was affirmed on internal appeal. *Id.* at ¶ 9.  Subsequent to the decision on appeal, the FBI informed Mr. Shapiro that an additional search determined that one responsive record was already released to Mr. Shapiro under his prior request regarding FBI file 94-69979.  *Id.* at ¶ 10.

---

[3]  The majority of statements in the Defendant's SOMF are not disputed by Mr. Shaprio.  *See* Pl.'s Response to Def.'s Statement of Material Facts ("Pl.'s Response to Def.'s SOMF"), ECF No. 15-1.  Accordingly, unless otherwise stated, all citations to the Defendant's SOMF indicate undisputed facts in this matter.

Third, on June 5, 2014, Mr. Shapiro requested that the FBI produce records relating to the word "mosaic." *Id.* at ¶ 16. The FBI assigned this request tracking number 1272599-000 and informed Mr. Shapiro that the request was overbroad and did not enable the FBI to locate records "with a reasonable amount of effort." *Id.* at ¶ 17; *see also* 28 C.F.R. § 16.3(b) (requiring FOIA requests submitted to DOJ to describe "the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort."). The FBI's decision was affirmed on internal appeal. Def.'s SOMF ¶ 18.

Fourth, Mr. Shapiro requested on June 5, 2014 that the FBI provide "any and all '94' files relating or referring to" FOIA or the Privacy Act. *Id.* at ¶ 20. The "94" files represent FBI research matters. Second Hardy Declaration ("Hardy Decl.") ¶ 23, ECF No. 17-1. The FBI assigned this request tracking number 1272733-000 and informed Mr. Shapiro that it located an estimated 1,140,000 pages of records potentially responsive to his request. Def.'s SOMF ¶¶ 21-22. After expending five and a half hours of time on this search without identifying any responsive records, the FBI administratively closed this request. *Id.* at ¶ 31. The FBI's search was affirmed on internal administrative appeal. *Id.* at ¶ 32.

Fifth, on December 15, 2014, Mr. Shapiro submitted a request seeking records responsive to "Operation Mosaic" and "mosaic study." *Id.* at ¶ 11. The FBI assigned this request tracking number 1272573-001 and, after processing his request, advised Mr. Shapiro that no responsive records were identified. *Id.* at ¶¶ 12-13. The FBI's search was affirmed on internal administrative appeal. *Id.* at ¶ 14.

Sixth, on May 11, 2016, Mr. Shapiro submitted a FOIA request seeking records related to the processing of three of his prior FOIA requests (tracking numbers 1272678-000, 1272573-000, and 1272573-001). *Id.* at ¶¶ 35, 40. The FBI assigned two tracking numbers to this request,

1351095-000 and 1353203-000. *Id.* at ¶¶ 36, 42; *see also* Notice, ECF No. 25 (clarifying that both tracking numbers pertain to the same request). Pursuant to these tracking numbers, the FBI reviewed and released to Mr. Shapiro 136 pages and 49 pages of documents, respectively. *Id.* at ¶¶ 39, 45. Some of these pages included redactions withheld on the bases of FOIA exemptions 5, 6, 7(C), and/or 7(E). *Id.* As the agency's production was made after this litigation commenced, no administrative appeal was filed. Notice 2, ECF No. 26.

The last of Mr. Shapiro's requests at issue in this litigation is his May 11, 2016 request to the OIP for records relating to three of his prior FOIA requests (tracking numbers 1272678-000, 1272573-000, and 1272573-001). Def.'s SOMF ¶ 54. He also requested records regarding the destruction of records potentially responsive to those requests. *Id.* The OIP assigned this request tracking number DOJ-2016-002983 and identified 128 pages of records responsive to Mr. Shapiro's request. *Id.* at ¶¶ 55, 58. Of the 128 pages, 24 were produced in full, 7 were produced with redactions pursuant to FOIA exemption 5, and 97 pages were referred to the FBI for processing. *Id.* at ¶ 62. As the agency's production was made after this litigation commenced, no administrative appeal was filed. Notice 1, ECF No. 26.

## B. Relevant FBI Systems

Compounding the complex background of this matter are the myriad systems used by the FBI.[4] Which of these systems the FBI searched, and how, forms the crux of Mr. Shapiro's complaint.

The FBI utilizes various systems for different operational needs, which contain information that is sometimes distinct but is sometimes overlapping. In October 1995, the FBI

---

[4] Mr. Shapiro does not challenge the adequacy of the OIP's search. *See generally* Mem. of P. & A. in Supp. of Pl.'s Cross-Mot. for Summary J. and in Opp. to Def.'s Mot. for Summary J.

began using its Automated Case Support ("ACS") system, a single, electronic, integrated case management system which permits the FBI to "locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions." Def.'s SOMF ¶ 47. As part of the ACS implementation process, over 105 million records from the FBI's Central Records System ("CRS") were converted and incorporated into ACS. *Id.* CRS is the FBI's repository for "applicant, investigative, intelligence, personnel, administrative, and general files." *Id.* at ¶ 46. It spans the entire FBI organization, including its headquarters, field offices, and legal attaché offices worldwide. *Id.* It is organized by "classifications," which include "types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters." *Id.* FBI case files are identifiable by a classification number, followed by the abbreviation of the FBI office of origin initiating the file, and the individual case file number. *Id.* For example, for fictitious file number "11Z-HQ-56789," the "11Z" is the classification number, "HQ" denotes the origin of the file as FBI headquarters, and "56789" is the case-specific file number. *Id.* n.1.

The key to locating information within CRS is through its index, which is arranged in alphabetical order according to "subject matters to include individuals, organizations, events, or other subjects of investigative interest." *Id.* The FBI does not index every name or other subject matter in the general index, but rather exercises discretion, based on operational necessity, to index "information considered relevant and necessary for future retrieval." *Id.* at ¶ 47. This may include indexing by individuals' name, by organization (e.g., entities, places, and things), or by event. *Id.* The FBI's index is searchable through its Universal Index ("UNI"), which is a

---

("Pl.'s Cross-Mot. for Summary J."), ECF No. 15 (challenging the FBI's searches in Part I, the FBI's refusal to process Mr. Shapiro's request for "94" files in Part II, and redactions in Part III). Therefore, the OIP's systems are not discussed.

centralized, electronic means of both indexing and searching for information. *Id.* Electronically searching UNI in ACS permits an individual to locate records, both in paper and electronic format, dating from prior to 1995, when CRS records were consolidated into ACS, to the present day. *Id.* UNI currently contains approximately 115.3 million searchable records. *Id.*

Also within ACS is the FBI's Electronic Case File ("ECF"), the "main, and most extensive ACS database." Pl.'s SOMF ¶¶ 7-8; Def.'s Response to Pl.'s SOMF ¶¶ 7-8. ECF is the central repository for the FBI's text-based documents, and can be searched for particular terms or phrases, as well as by case number and other characteristics. *Id.* at ¶¶ 9, 11-13; Def.'s Response to Pl.'s SOMF ¶¶ 9, 11-13. The FBI "does not generally conduct text searches in response to FOIA and Privacy Act requests without a bona fide factual reason to do so," such as a "clear and certain lead" generated from an index search of CRS, or where the FBI has a "factual basis" to determine that responsive records exist in CRS but were not located through an index search. Mem. of P. & A. in Opp. to Pl.'s Cross-Mot. for Summary J. and Reply in Supp. of Def.'s Mot. for Summary J. ("Def.'s Reply") 6, ECF No. 18; Def.'s Response to Pl.'s SOMF ¶ 15.

In July 2012, the FBI debuted its next generation case management system, Sentinel, which "builds on ACS and shares its operational purpose." Def.'s SOMF ¶ 48. Sentinel is used for FBI records generated after July 1, 2012 and similarly utilizes an indexing system to organize information for future retrieval. *Id.* All records originally located within ACS, including most ECF content, has been migrated to Sentinel as legacy content. Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 7 n.1, ECF No. 30-1. Further, certain of Sentinel's index are "backfilled" into ACS. Def.'s SOMF ¶ 48. Thus, while Sentinel did not replace ACS, it provides another avenue by which to locate FBI records generated both prior to and after July 1, 2012. *Id.*

Distinct from, but related to, CRS is the FBI's Electronic Surveillance System ("ELSUR"). *Id.* ELSUR is similarly searchable through an index search of ACS and Sentinel, but only indexes information by the names of the targets; participants; or owners, lessors, or licensors of the premises that is the subject of FBI surveillance. *Id.* While ELSUR files contain records of electronic surveillance, other pertinent information, such as the application and court order authorizing the surveillance where the electronic surveillance is being conducted, is maintained in CRS. *Id.* Thus, there must exist a CRS record for every record in ELSUR. *Id.*

Last, the FBI has a Freedom of Information and Privacy Document Processing System ("FDPS") which helps to "maintain information that [the FBI] has acquired in the course of fulfilling its responsibilities under the FOIA and Privacy Act." Second Hardy Decl. ¶ 18. FDPS is the official records storage location for all FOIPA processing records, *id.* at ¶ 19, and is searchable by FOIA and/or Privacy Act request numbers. Def.'s SOMF ¶ 53. The FBI explains, given the difference in their operational functions—namely, a tracking system for FOIA and Privacy Act requests versus documents pertaining to the FBI's law enforcement responsibilities—that "[t]he vast majority of FOIPA request records are not maintained, indexed, or cross-referenced in the CRS." Second Hardy Decl. ¶¶ 21-22.

### C. Procedural History

Subsequent to the parties' cross-motions for summary judgment becoming ripe, I ordered and heard a hearing on the cross-motions. After the hearing, I ordered that the Defendant perform ECF text searches of "94-HQ-69979," "94-69979," and "Operation Mosaic," and conduct a targeted physical search of the paper files in the "94" classification, or submit a supplemental declaration describing why these searches are not required by law. Minute Order Dec. 21, 2017; Minute Order Jan. 12, 2018. I also ordered the Defendant to submit for *in*

*camera* review the documents redacted pursuant to the deliberative process privilege.  Minute

Order Dec. 20, 2017.  With the Defendant's responses to these orders now complete, I now

consider whether the Defendant's responses to Mr. Shapiro's requests merit summary judgment.

## II.  LEGAL STANDARD

### A.  Summary Judgment

FOIA requires federal agencies to "disclose information to the public upon reasonable

request unless the records at issue fall within specifically delineated exemptions."  *Judicial*

*Watch, Inc. v. FBI*, 522 F.3d 364, 365-66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A)

(records sought must be "reasonably describe[d]").  The "vast majority" of FOIA cases can be

decided on motions for summary judgment.  *See Brayton v. Office of U.S. Trade Representative*,

641 F.3d 521, 527 (D.C. Cir. 2011).  To prevail on summary judgment, the movant must show an

absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In

FOIA cases, an agency must demonstrate that no material facts are in dispute, that it has

conducted an adequate search for responsive records, and that each responsive record has either

been produced to the requestor or is exempt from disclosure.  *See Weisberg v. U.S. Dep't of*

*Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

### B.  Adequacy of Search

The agency's search is adequate if the agency has conducted "a good faith effort to []

search for the requested records, using methods which can be reasonably expected to produce the

information requested."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  In

other words, the agency must "demonstrate beyond material doubt that its search was reasonably

calculated to uncover all relevant documents." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). However, the touchstone of the analysis is the reasonableness of the agency's search, not the records produced. *See Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) ("[T]he adequacy of a search is determined not by the fruits of the search, but by the appropriateness of [its] methods.") (internal quotation marks omitted); *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) ("[A] search, under FOIA, is not unreasonable simply because it fails to produce all relevant material."). An agency has discretion to craft its search to meet this standard, and does not have to search every system if additional searches are unlikely to produce any marginal return. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Once the agency has conducted a good faith, reasonably calculated search, the requesting party has the burden to show that the record contains "lead[s] that [are] both clear and certain" in order to prompt the search for additional sources of information. *See Hodge*, 703 F.3d at 580; *Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). This is an "exacting standard." *Reporters Comm. for Freedom of the Press & Assoc. Press v. FBI*, 877 F.3d 399, 407 (D.C. Cir. 2017).

To demonstrate reasonableness of its search, an agency can submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. The D.C. Circuit has recently reiterated that an affidavit submitted in support of a motion for summary judgment must describe the agency's search methodology with "specificity." *Reporters Comm.*, 877 F.3d at 403. For example, prior D.C. Circuit cases have examined affidavits for descriptions of the search strategy of the agency, including search terms; how the search was conducted; and what the search specifically yielded. *See, e.g., Aguiar v.*

*Drug Enforcement Agency*, 865 F.3d 730, 738-39 (D.C. Cir. 2017); *DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015); *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1122 (D.C. Cir. 2007).

But courts are not to be unduly skeptical of the averments contained within these declarations. Agency declarations are given "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. Inc.* v. *S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *see also Meeropol v. Meese*, 790 F.2d 942, 954 (D.C. Cir. 1986) ("In the absence of more concrete evidence from appellants that such files actually exist, their speculative assertions cannot serve as the basis for vacating the grant of partial summary judgment.").

Last, an agency is not required to accede to a request that requires an "unreasonably burdensome search." *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 353 (D.C. Cir. 1978). Requests can impose an unreasonable burden on the agency if they "are so broad as to . . . require the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *Am. Fed'n of Gov't Emps. v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990).

## C. Exemptions

FOIA requires that an agency produce all records responsive to a properly submitted request unless the record is protected from disclosure through a statutory exemption. *See* 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). The agency has the burden of demonstrating that the withheld document falls into one of the enumerated exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). This includes providing a

sufficiently detailed description of the exemption, the portion(s) of documents to which it

applies, and justification as to why the exemption is relevant, such that the district court can

conduct a *de novo* review of the agency's determination. *See Church of Scientology of Cal, Inc.

v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980); *Mead Data Cent., Inc. v. U.S. Dep't of the Air

Force*, 566 F.2d 242, 251 (D.C Cir. 1977).

### III. ADEQUACY OF THE FBI'S AND OIP'S SEARCHES

The seminal question to resolving the cross-motions for summary judgment is whether

the agency conducted searches for the requested material using "methods which can be

reasonably expected to produce the information requested." *See Oglesby*, 920 F.2d at 68. In

summary, DOJ argues that its searches were adequate because it conducted electronic searches of

the CRS and ELSUR indices through the UNI application of ACS and Sentinel, and a physical

search of files from the FBI's Alexandria Records Centers ("ARC" or the "Center"), which

stores the FBI's closed files from its headquarters and field offices. Def.'s Mot. for Summary J.

5-6. The thrust of Mr. Shapiro's counter-argument is that index searches were inadequate, and

that the FBI should have conducted full-text searches in ECF as well. Pl.'s Cross-Mot. for

Summary J. 11. Each of Mr. Shapiro's requests is addressed in turn.

#### A. Request 1272678-000 for FBI file 94-69979

Mr. Shapiro's June 5, 2014 request, tracking number 1272678-000, sought "any and all

records that were prepared, received, transmitted, collected and/or maintained by the FBI, the

Terrorist Screening Center, the National Joint Terrorism Task Force, or any Joint Terrorism Task

Force relating or referring to FBI file 94-69979." Def.'s SOMF ¶ 1. In response to

Mr. Shapiro's request, the FBI requested the physical file for 94-HQ-69979 from the ARC.

Def.'s SOMF ¶ 51.  As part of its file review, the FBI processed and reviewed all responsive records in the file, including subfiles, bulky exhibits, 1A material, and unserialized records. Second Hardy Decl. ¶ 9.  The FBI avers that this targeted search was reasonably calculated to locate any responsive records.  Def.'s Mot. for Summary J. 6-7.

Mr. Shapiro argues that simply retrieving and reviewing the physical file was insufficient because his request covered all records "relating or referring to" the file, and that an ECF text search for both "94-HQ-69979" and "94-69979" is therefore required in order to identify all responsive records.  Pl.'s Cross-Mot. for Summary J. 12.  The FBI disputes that it was required to conduct an ECF search in the absence of any "leads suggesting a text search is warranted," but ultimately, "in an abundance of caution," did perform an ECF text search for "94-HQ-69979." Def.'s Reply 9.  The ECF search resulted in the identification of responsive records which were processed and released to Mr. Shapiro. *Id*.  Unfulfilled, Mr. Shapiro argues that an ECF text search should also have been performed for "94-69979" as potentially responsive documents can refer to the file number both with and without the office of origin.  Reply in Supp. of Pl.'s Cross-Mot. for Summary J. ("Pl.'s Reply") 17-18.

Without needing to resort to the question of whether an ECF text search was necessary to satisfy the FBI's mandate to conduct the search by a "method[] which can be reasonably expected to produce the information requested," *Oglesby*, 920 F.2d at 68, once the FBI conducted an ECF text search of "94-HQ-69979," it should also have conducted an ECF text search of "94-69979," particularly as Mr. Shapiro's request was originally styled without the office of origin.  *See* Def.'s SOMF ¶ 1.  Since the FBI determined to conduct an ECF text search, it should have used a method—here, search terms—that would reasonably be expected to produce responsive records.  As investigative files may be referred to both with and without the

office of origin, both terms should have been searched. However, no genuine issue of material fact remains pertaining to this request. Subsequent to the hearing on the parties' cross-motions for summary judgment, I ordered that the FBI conduct ECF text searches of "94-HQ-69979" and "94-69979." Minute Order, Dec. 21, 2017; Minute Order, Jan. 12, 2018. The FBI has now satisfied this obligation. The ECF text search for "94-HQ-69979" confirmed the results of the FBI's prior search. Seidel Decl. ¶ 7. The ECF text search for "94-69979" produced zero results, responsive or otherwise. Third Declaration of David M. Hardy ¶ 6, ECF No. 34-1. A text search in Sentinel identified three non-responsive results. *Id.* at ¶ 7. Thus, the Defendant has discharged its FOIA responsibilities for this request.

**B. Request 1272573-000 for Operation Mosaic**

Mr. Shapiro's June 5, 2014 request, tracking number 1272573-000, sought "any and all records that were prepared, received, transmitted, collected and/or maintained by the FBI, the Terrorist Screening Center, the National Joint Terrorism Task Force, or any Joint Terrorism Task Force relating or referring to Operation Mosaic," as well as "(1) records relating to the decision to initiate Operation Mosaic; (2) records relating to '[r]esearch for, implementation of, conducting of, assessment of, and termination of Operation Mosaic'; (3) records about the dissemination of Operation Mosaic information; (4) '[i]nstructional records, policy records, or memoranda relating or referring to Operation Mosaic'; (5) 62, 80, 94, 190, and 197 files relating or referring to Operation Mosaic; (6) records relating to the FBI's monitoring of the results of Operation Mosaic, including press clippings." Pl.'s Cross-Mot. for Summary J. 18.

In response to Mr. Shapiro's request, the FBI conducted index searches for "Operation Mosaic" in CRS, using ACS's UNI feature, as well as in Sentinel. Def.'s SOMF ¶ 49. The search included a "string" breakdown of the search term variations, meaning that variations of

the term searched would automatically have also been captured. *Id*. n.2. The FBI avers that it did not identify any responsive records indexed to the subject of the request, and that this method of searching—*i.e.*, by index—can reasonably be expected to locate the information requested. Def.'s Mot. for Summary J. 6.

Mr. Shapiro argues that performing an index search was not an appropriate method that would lead to a reasonable expectation of locating responsive documents because his request was not the type of information that would be indexed. Pl.'s Cross-Mot. for Summary J. 9. Namely, the index, which is based on "individuals, organizations, events, or other events of investigative interest," would not include the "FBI's administration of FOIA matters and [] the conceptual framework of the mosaic theory." *Id*. Mr. Shapiro further supports his argument by citing the discretion that the FBI has in indexing information. *Id.*; *see also* Def.'s SOMF ¶ 47 ("the FBI only indexes that information considered relevant and necessary for future retrieval."). As such, Mr. Shapiro contends, the FBI should have performed an ECF text search for "Operation Mosaic." Pl.'s Cross-Mot. for Summary J. 18-19. Mr. Shapiro further argues that performing an ECF search is not unreasonably burdensome because the term is "singular in nature" and therefore all results would be responsive. Pl.'s Cross-Mot. for Summary J. 11. The FBI disagrees, citing ECF searches as an "extraordinary measure" that is not warranted where, as here, the CRS index search did not locate any record providing a clear and certain lead to the existence of another record. Def.'s Reply 6.

After oral argument on the parties' cross-motions for summary judgment, I ordered the Defendant to perform an ECF text search of "Operation Mosaic" or to "submit a supplemental declaration describing in greater detail the efforts that Defendant has taken with respect to th[is] request[], including why th[is] additional search[] [is] not required by law." Minute Order, Dec.

21, 2017. In response, the FBI conducted an ECF text search for "Operation Mosaic," which resulted in three hits, and a search in Sentinel for "Operation Mosaic," which resulted in two additional hits. Seidel Decl. ¶ 9.[5] After review of all five records, the FBI concluded that none were responsive. *Id.*[6] I find that the ECF text search of "Operation Mosaic," coupled with the previously-performed index searches in CRS and Sentinel, adequately cover the breadth of Mr. Shapiro's request, and that no issue of material fact remains with respect to this request.

### C. Request 1272599-000 for mosaic

Mr. Shapiro's June 5, 2014 request, tracking number 1272599-000, sought "all records that were prepared, received, transmitted, collected and/or maintained by the FBI, the Terrorist Screening Center, the National Joint Terrorism Task Force, or any Joint Terrorism Task Force" relating, referring, or containing the word "mosaic" and (1) "all manuals, policies, guidance, curriculum, standard operating procedures, training [] materials, PowerPoint slides, or other instructional or policy records containing the word 'mosaic'"; (2) emails containing the term "mosaic," including emails to or from enumerated individuals; (3) other correspondence or memoranda containing the word "mosaic"; and (4) 62, 80, 94, 190, and 197 files containing the word "mosaic." Pl.'s Cross-Mot. for Summary J. 15-16.

---

[5] The Seidel Declaration also explains that Sentinel conducts a search of all text fields in the document, including the title of the investigation and the body of the document, whereas ECF text searches only searches for text in the body of the document. This explains the additional records that resulted from the Sentinel search for "Operation Mosaic." *Id.* n.3.

[6] Contrary to Mr. Shapiro's assertion that all results for terms "singular in nature" would be responsive, there may be results to a search term that do not refer to the same subject of the request. Indeed, the FBI identified an "Operation Mosaic" that related to a human trafficking operation, and other results that consisted of counterintelligence and organized crime information. *Id.*

The FBI's response to this request mirrored its response to Mr. Shapiro's request for Operation Mosaic-related records. The FBI conducted index searches for "mosaic" in CRS, using ACS's UNI feature, as well as in Sentinel. Def.'s SOMF ¶ 49. The search included a "string" breakdown of the search term variations, meaning that variations of the term searched would automatically have also been captured. *Id*. n.2. The FBI did not identify any responsive records indexed to the subject of the request. Def.'s Mot. for Summary J. 6. Mr. Shapiro's arguments regarding the adequacy of the FBI's search for "mosaic" are the same objections as to the agency's search for "Operation Mosaic" previously described in Section III.B., and I therefore do not repeat them here.

However, a key difference between the requests is the nature of the information sought. "Operation Mosaic" may refer to one or several discrete events or propositions,[7] whereas "mosaic" is a wholly generic term, to be used in potentially a variety of contexts that may have nothing to do with Mr. Shapiro's actual interest. Conducting an ECF text search for "mosaic," and requiring the FBI to conduct a hit-by-hit review and analysis of each result, could be unreasonably burdensome. *See Goland*, 607 F.2d at 353 (finding that a page-by-page search of documents in the agency's record center was not necessary where the agency had already conducted certain other procedures to obtain the information requested). Although Mr. Shapiro suggests that an ECF text search of "mosaic" in combination with other terms would both be reasonably calculated to return responsive documents and not unreasonably burdensome, I find, given that: (i) the FBI has already searched its CRS and Sentinel indices for the term "mosaic" without identifying any responsive records; (ii) Mr. Shapiro's other requests covered the more

---

[7] While "Operation Mosaic" could be a discrete term, as Mr. Shapiro argues, it nevertheless is possible that multiple investigations or events may be coined "Operation Mosaic" or use the phrase. *See* Section III.B., *supra* note 6.

targeted terms "Operation Mosaic" and "mosaic study;" *see* Section III.B., *supra*; and Section III.D, *infra*; which is at the heart of what Mr. Shapiro seeks; and (iii) given that the FBI's ECF text search of "Operation Mosaic" produced no responsive records, conducting an ECF text search for "mosaic" is not a necessary component to a search reasonably calculated to uncover records responsive to Mr. Shapiro's request.

Because an adequately designed search responsive to Mr. Shapiro's request does not require an ECF text search for "mosaic," this matter is in a different posture than *Mattachine Society of Washington, D.C. v. United States Department of Justice*, in which the Court rejected the defendant's argument that an ECF search of the broad terms "gay," "lesbian," and "homosexual" was unduly burdensome. 267 F. Supp. 3d 218, 227 (D.D.C. 2017). In *Mattachine*, the Government recognized that an index search would not be a suitable means of identifying the information that the plaintiff requested, and therefore an ECF text search was the only means of identifying responsive information. Second Declaration of David M. Hardy ¶ 8, *Mattachine Society of Washington, D.C. v. U.S. Dep't of Justice*, No. 16-cv-773 (D.D.C. July 28, 2017), ECF No. 43-1. Here, as I have already determined that the FBI's search was adequately formed to produce responsive records to Mr. Shapiro's request relating to "mosaic," whether an ECF text search is unduly burdensome is not a question that I have to reach.

### D. Request 1272573-001 for Operation Mosaic and mosaic study

Mr. Shapiro's December 15, 2014 request, tracking number 1272573-001, sought records relating to "Operation Mosaic" and "mosaic study." In response to Mr. Shapiro's request, the FBI conducted index searches for "Operation Mosaic" and "mosaic study" in CRS, using ACS's UNI feature, as well as in Sentinel. Def.'s SOMF ¶ 49. No responsive records were identified through these searches. Def.'s Mot. for Summary J. 6.

Mr. Shapiro challenges the FBI's assertion that index searching was adequate; *see* Section III.B., *supra*; and further argues that, even under the FBI's own policy, an ECF search is warranted. Pl.'s Cross-Mot. for Summary J. 14. The FBI may conduct an ECF search when: "(a) a search of the CRS locates no records but the FBI has reason to believe that responsive records likely exist; or (b) a search of the CRS results in some records being located but there is information indicating that more specific responsive records likely exist." *Id.* at 13. Here, Mr. Shapiro maintains that the FBI was aware, though the Webster article, *inter alia*, that other documents responsive to the request likely exist, and an ECF text search was therefore warranted. *Id.* at 14.

With respect to an ECF search of "Operation Mosaic," the FBI has now conducted this search with three non-responsive results. Seidel Decl. ¶ 9. With respect to "mosaic study," the searches were adequately designed to return responsive information, and the FBI had no reason to believe that responsive records likely exist. The study in the Webster article is specifically noted to be "Operation Mosaic" and not a nondescript, generic term. *See* Pl.'s SOMF ¶ 2; Def.'s Response to Pl.'s SOMF ¶ 2. Yet an index search in CRS for "Operation Mosaic" identified no responsive records. Def.'s Mot. for Summary J. 6. Searches of the CRS and Sentinel indices—which methodically categorize and arrange over 105 million records in both paper and electronic formats according to operational need—for "mosaic study" identified no results. The fact that no responsive documents were identified pursuant to a reasonably designed search does not affect the adequacy of the search. *See Hodge*, 703 F.3d at 579 ("the adequacy of a search is determined not by the fruits of the search, but by the appropriateness of [its] methods"). Further, Mr. Shapiro points to no "clear and certain" leads for the vague term "mosaic study" such that the FBI should have conducted additional searches beyond its already good faith, reasonably

calculated search.  *See id.* at 580; *Kowalczyk*, 73 F.3d at 389.  Further, as the search outcomes provided no indication that records responsive to the non-specific term "mosaic study" likely exist, the FBI's search was consistent with its policy.

Mr. Shapiro also argues that the FBI improperly failed to process and release non-exempt portions of records that the FBI itself deemed responsive.  Pl.'s Cross-Mot. for Summary J. 15; *see also* Pl.'s SOMF ¶¶ 21-36.  The Defendant explains that the records that Mr. Shapiro cites were listed on a search slip, a document created by the FBI during its index search for responsive records, and that the records were either deemed non-responsive or were previously destroyed by the National Archives and Records Administration in accordance with their regulations governing the disposal of such records.  Def.'s Reply 9-10; Def.'s Response to Pl.'s SOMF ¶¶ 21-36.  In the absence of any indication that the records were destroyed in bad faith, I find that the FBI did not improperly fail to process or release these records to Mr. Shapiro.[8]

### E.  Request 1272733-000 for "94" Files

Mr. Shapiro's June 5, 2014 request, tracking number 1272733-000, sought "any and all '94' files relating or referring to the Freedom of Information Act and/or Privacy Act."  Def.'s SOMF ¶ 20.  In response to Mr. Shapiro's request, the FBI requested all "94" files contained at the ARC.  Def.'s SOMF ¶ 52.  The ARC informed the FBI that there were 119 shelves at the Center devoted to "94" files and they were not separated by years.  *Id.*  The FBI then conducted a manual search for responsive records within a select portion of the "94" files, spending five and a half hours on the request.  *Id.*  The FBI avers that its searching failed to locate responsive records and, without an indication that further searching would locate any responsive material,

---

[8]  Indeed, given that—according to Mr. Shapiro—"Operation Mosaic" occurred about 40 years ago, it is hardly surprising that many potentially relevant documents were destroyed long ago.

discontinued its search. Def.'s Mot. for Summary J. 7. Mr. Shapiro debates this methodology as the FBI's five and a half hours of searching were through reviewing files selected, at random, among the files on the "94" shelves. Pl.'s Cross-Mot. for Summary J. 21. It is unsurprising, then, Mr. Shapiro counters, that no responsive records were located. *Id.* Mr. Shapiro suggests that a more systematic way of approaching this request would have been for the FBI to conduct an ECF text search for appropriate keywords (*e.g.*, FOIA, Privacy Act) and to filter its results by the "94" classification code. *Id.* at 22.

After the hearing on the parties' cross-motions for summary judgment, I ordered the Defendant to "conduct a targeted physical search of the paper files in the '94' classification; or submit a supplemental declaration describing in greater detail the efforts that Defendant has taken with respect to these requests, including why these additional searches are not required by law." Minute Order, Dec. 21, 2017. In the FBI's responsive supplemental declaration, it clarified that the 119 shelves of "94" classification files contain records dated 1991 and earlier. Seidel Decl. ¶ 10. For files after 1991, the files are stored numerically by case number, instead of by file classification, which makes it more difficult to discern which are "94" files. *Id.* at ¶ 11. Although the FBI discovered a listing of the locations of all "94" classification file numbers created during an inventory of all FBI files, the list only contains the location of the file, and not the subject matter of the file. *Id.* at ¶ 13. Because each of the approximately 99,700 files on the list would have to be manually pulled, opened, and reviewed to determine if it was responsive to Mr. Shapiro's request, the FBI determined that this approach would be too unwieldy. *Id.* The FBI then adjusted their approach and attempted to locate responsive records by searching within

Sentinel for documents in the "94" file classification originating from its headquarters.[9]  This

resulted in 8,326 hits, each requiring its own individual review for responsiveness.  Seidel Decl.

¶ 13.  The FBI reviewed the first 100 hits and found that none were responsive to FOIA (the

subject of this request) or the mosaic theory (the subject of Mr. Shapiro's other requests).  *Id.*

Given the volume of hits, and lack of indication that these files contain the records that

Mr. Shapiro seeks, the FBI argues that this search is unreasonably burdensome and not

reasonably likely to identify responsive records.  *Id.*

I agree with the FBI.  Its declarations have explained that for files dated 1991 or before,

there are 119 shelves with "94" files, and that identification within these files for records relating

to FOIA or the Privacy Act requires a line-by-line review.  *Id.* at ¶ 10.  Files dated after 1991 are

not organized in a manner such that identification of "94" files is readily achievable.  *Id.* at ¶ 11.

Even though a listing of all "94" files exists, the list contains nearly 100,000 files and does not

provide further detail to help focus the FBI's inquiry on the subject of Mr. Shapiro's request,

"94" files pertaining to FOIA or the Privacy Act.  *See id.* at ¶ 13.  A search conducted by

electronic means that limited the scope of the FBI's request to "94" files originating from the

FBI's headquarters produced over 8,300 hits, each of which requires manual review.  *See id.*

Furthermore, not all "94" files have been automated; a fully comprehensive review would

therefore require the FBI to conduct both the paper-based and electronic review.  Second Hardy

Decl. ¶ 25.  The FBI's collective five and a half hour paper-based review and electronic review

of the first 100 hits did not flush out any indication that further review would likely contain

records responsive to Mr. Shapiro's request, and I have no reason to believe the expenditure of

---

[9]  This would exclude any documents originating from any FBI field or legal attaché office
worldwide.  *See* Def.'s SOMF ¶ 46.

further limited FBI resources would be worth the effort. I therefore find that to require the FBI to continue these reviews would be unreasonably burdensome. *See, e.g.*, *Founding Church of Scientology of Washington, D.C. v. National Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) ("When the agency has not previously segregated the requested class of records[,] production may be required only where the agency (can) identify that material with reasonable effort.") (internal quotation marks omitted).

### F. Requests 1351095-000 and 1353203-000

Mr. Shapiro submitted FOIA requests for "190" files responsive to the processing of his FOIA requests relating to "Operation Mosaic," "mosaic study," and file 94-HQ-69979 (tracking numbers 1272573-000, 1272573-001, and 1272678-000, respectively). Pl.'s Cross-Mot. for Summary J. 20. Classification "190" describes records pertaining to the FBI's FOIA and Privacy Act requests. *Id.* Ex. 17. In response to Mr. Shapiro's request, the FBI conducted a search of FDPS using the FOIA request numbers provided by Mr. Shapiro, and made productions of 136 and 49 pages of responsive information. Def.'s SOMF ¶¶ 39, 45; Def.'s Mot. for Summary J. 7. The FBI avers that the FDPS is the only system likely to contain responsive material and therefore a search of FDPS was reasonably expected to locate the information requested. *Id.* Mr. Shapiro disputes this and argues that the FBI should have searched CRS for responsive records, since, in a letter acknowledging the request, the FBI stated that it is "searching the indices to [CRS] for [responsive] information." Pl.'s Cross-Mot. for Summary J. Ex. 19. In particular, Mr. Shapiro believes that, because his request focused the request to "190" files, that the FBI is required to search for the files as specified by Mr. Shapiro's request. Pl.'s Reply 18. The FBI acknowledges that its letter referenced a CRS search, but explains that the letter used

"standard language [from] all our responses to FOIA/Privacy Act requests, and to the extent it is misleading, this was done inadvertently." Second Hardy Decl. ¶ 21 n.5.

For this request, I find that a search of FDPS was reasonably expected to produce the information requested. As explained by the FBI's affidavit, CRS is used to maintain documents pertaining to the agency's law enforcement duties. Second Hardy Decl. ¶ 21. FDPS, a separate system, is the FBI's primary records storage location for documents relating to the processing of FOIA requests. *Id.* at ¶¶ 18-20, 22. Thus, records responsive to Mr. Shapiro's request, pertaining to the processing of his FOIA requests, would reasonably be expected to exist in the FDPS system. As a result of the FBI's search in FDPS, it identified and produced 185 pages of responsive information to Mr. Shapiro. The search of FDPS, and not the CRS index, was an appropriate "case-specific exercise[] of discretion and administrative judgment and expertise," *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003), "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. In any event, the Defendant, not Mr. Shapiro, has the right to craft the required searches. *See Campbell*, 164 F.3d at 28.

### G. Request DOJ-2016-002983

This request contained two parts: Mr. Shapiro sought records pertaining to the administrative appeals taken on certain of his requests, and also sought any records regarding the destruction of any records responsive to his prior FOIA requests. Def.'s SOMF ¶ 54. In response to the first part of Mr. Shapiro's request, which asked for records pertaining to his administrative appeals for requests 1272573-000 ("Operation Mosaic"), 1272573-001 ("Operation Mosaic" and "mosaic study"), and 1272678-000 (FBI file 94-69979), the OIP conducted a search for records in its on-site file room, which contains all administrative appeal files adjudicated, regardless of disposition, from the past six fiscal years. *Id.* at ¶¶ 57-58. The

OIP identified 128 pages of responsive information. *Id.* at ¶ 58. The OIP avers that this search was reasonably calculated to identify all potentially responsive records, Def.'s Mot. for Summary J. 7-8, and Mr. Shapiro does not contest the adequacy of this search. *See* Section I.B., *supra* note 4. I agree that the OIP's search was adequate. With respect to the second part of Mr. Shapiro's request, which was for any records regarding the destruction of records responsive to Mr. Shapiro's prior FOIA requests, the OIP determined that no response was necessary as no records had been destroyed. *Id.* at ¶ 59. Mr. Shapiro does not contest this determination. *See* Pl.'s Response to Def.'s SOMF ¶ 59.

## IV.   PROPRIETY OF EXEMPTIONS CLAIMED FOR RESPONSIVE RECORDS

The Defendant produced certain responsive records to Mr. Shapiro with redactions pursuant to FOIA exemptions 5, 6, 7(C), and/or 7(E).[10] I address the propriety of each of these claimed exemptions below.

### A.  Exemption 5

FOIA exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, the exemption covers records that would "normally [be] privileged in the civil discovery context," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), such as the attorney-client privilege, the attorney work product doctrine, and the

---

[10] The Defendant has since withdrawn all withholdings made pursuant to FOIA exemption 7(E). Def.'s Notice of *Ex Parte, In Camera* Filing, ECF No. 29. Additionally, the Defendant has since withdrawn the exemptions claimed on certain portions of documents or certain documents in full, and has re-processed and produced to Mr. Shapiro revised documents reflecting these revisions. *See id.* (withdrawing certain exemption 5 redactions); Second Hardy Decl. ¶ 29 (releasing document Bates numbered Shapiro 190-110 in full). Consequently, I analyze only those withholdings that are still claimed by the Defendant and challenged by Mr. Shapiro.

executive deliberative process privilege. *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The Defendant redacted certain documents pursuant to the deliberative process privilege and/or the attorney work product doctrine.

The deliberative process privilege protects intra- or inter-agency documents that reflect "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. U.S. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008). The deliberative process privilege exists to encourage "candid discussion within the agency," *see Quarles v. U.S. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990), and therefore protects not only "deliberative material, but also the deliberative process of agencies." *Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974). Materials protected are both predecisional and deliberative. *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Citing this doctrine, the FBI redacted portions on six pages of produced documents: a Notes Summary Information Sheet (redactions across three pages Bates numbered Shapiro 190-8 through 190-10) and a FBI search slip (redactions across three pages Bates numbered Shapiro 190-11 through 190-13). Pl.'s Cross-Mot. for Summary J. Ex. 11. The OIP also redacted three "Blitz" forms and one handwritten note created by its Administrative Appeals staff attorneys in the course of adjudicating Mr. Shapiro's administrative appeal. Declaration of Vanessa R. Brinkmann ¶ 12, ECF No. 13-6; *see also id.* Ex. D.

The FBI argues that the processing notes and search slip document the agency's deliberative process in determining the disposition of Mr. Shapiro's FOIA requests. *See* Def.'s Mot. for Summary J. 11. Upon reviewing these redactions *in camera*, I agree. The redacted portions on documents Bates numbered Shapiro 190-8 through 190-10 reflect FBI employees' comments as to how they searched for documents potentially responsive to Mr. Shapiro's

requests, and the employees' evaluations as to the responsiveness of certain documents resulting

from their searches. These comments were made during the FBI's search and review process—

*i.e.*, prior to the FBI's final determination on these documents—and are therefore predecisional

as well as deliberative.[11]

    I also agree with the OIP's determination that the material redacted on the three "Blitz"

forms and on one handwritten note is the predecisional and deliberative process of the agency.

The information redacted contains the impressions, analysis, and recommendation of OIP staff in

their evaluation and adjudication of the adequacy of the FBI's searches. Since these notes and

comments were made during the course of the OIP's adjudication, prior to it rendering a decision

on Mr. Shapiro's appeal, the material is both predecisional and deliberative, and was properly

withheld.[12]

### B. Exemption 6

    The FBI also redacted certain information on documents Bates numbered Shapiro 190-12

and 190-13 pursuant to FOIA exemption 6, which governs "personnel and medical files and

similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6). Although the statute is specific to "personnel and medical files,"

the Supreme Court has clarified that information that "applies to a particular individual" may be

---

[11] Mr. Shapiro points out that the remainder of information withheld by the FBI under the deliberative process privilege is "primarily factual in nature, including such matter as file numbers." Pl.'s Cross-Mot. for Summary J. 23. As the FBI claimed that this information was also exempt under FOIA exemptions 6 and/or 7(C), and I address the propriety of redacting file numbers within the discussion of those exemptions below.

[12] As the deliberative process privilege provides an independent ground for the propriety of these redactions, I do not have to reach whether the OIP properly withheld this information pursuant to the attorney work product doctrine.

exempted.  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  Accordingly, the FBI redacted certain "names of and identifying information, to include administrative file numbers and serials" pertaining to FBI Special Agents and other support personnel.  Pl.'s Cross-Mot. for Summary J. 31.  Mr. Shapiro does not contest the redaction of FBI Special Agent and support personnel names, but argues that the FBI has failed to adequately explain how administrative file numbers and serials could be traced back to particular individuals.  *Id.*

The FBI explains that although these file numbers and serials may not, on their own and on their face, divulge personal information, they may be used in conjunction with, or cross-referenced with, other information in the public domain (whether obtained through a FOIA request or other means) to uncover certain private information, such as the existence of an individual's employment status or investigation, the type and nature of employment or investigation, the geographical area of the matter, and potentially the extent of someone's career with the FBI or amount of information obtained by the FBI.  *See* Second Hardy Decl. ¶ 30; Tr. of Proceedings at 43, ECF No. 33.  For instance, a file number with redacted personal information in this case could be cross-referenced to a file number with unredacted information already in the public domain, which would allow one to identify individual(s) involved in this case.  Furthermore, these file numbers and serials were deemed not responsive to Mr. Shapiro's request.  Second Hardy Decl. ¶ 30.  I find that the Defendant has adequately explained how these file numbers implicate an individual's privacy interest, and that no competing consideration in this case compels their production.  Therefore, I find that the FBI's redactions made under exemption 6 are proper.

## C. Exemption 7(C)

FOIA Exemption 7(C) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Although worded similarly to FOIA exemption 6, exemption 7 requires a lesser showing and protects a broader set of information. *Compare* 5 U.S.C. § 522(b)(6) (protecting certain documents that "*would* constitute a *clearly* unwarranted invasion of personal privacy) *with* 5 U.S.C. § 522(b)(7)(C) (protecting documents that "*could reasonably be expected* to constitute an unwarranted invasion of personal privacy) (emphasis added); *see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989) (noting the difference between the two provisions). Citing this exemption, the FBI redacted "an investigative file serial created to investigate specific individuals for possible violations of federal crimes" as "[r]elease of this information would allow for access, through the FOIA or otherwise, to information pertaining to the FBI's investigation of these individuals." Pl.'s Cross-Mot. for Summary J. 30. Mr. Shapiro does not challenge that the file was created for law enforcement purposes, conceding the threshold question of a law enforcement purpose, but again disputes that the disclosure of an investigative file number and/or serial could reasonably be expected to constitute an unwarranted invasion of personal privacy. *See id.* at 30-31. I find that the investigative information was properly redacted under FOIA exemption 7(C). Similarly as with exemption 6, the disclosure of the file number and/or serial could identify the type of criminal activity at issue, the geographical location where the investigation was initiated, and the amount of intelligence obtained by the FBI, as well as, in concert with other information, the subject of the investigation. This information, which was deemed non-responsive to Mr. Shapiro's request, Second Hardy Decl. ¶ 30, was properly withheld.

## V.    CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment will be granted and Mr. Shapiro's motion for summary judgment will be denied.  A separate order will issue.

Dated: February 1, 2018

TREVOR N. MCFADDEN
United States District Judge